IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA            )
                                    )
        v.                          )        CASE NO. 1:12CR038
                                    )
OTASOWIE CHRISTOPHER ASUEN          )


RESPONSE TO DEFENDANT'S APPEAL OF MAGISTRATE'S DETENTION ORDER

COMES NOW the United States of America, by and through its attorneys, Neil H. MacBride, United States Attorney, and Kimberly Riley Pedersen, Assistant United States Attorney, and responds to the defendant's appeal of the magistrate's detention order as follows:

1.      A federal grand jury sitting in Alexandria returned an indictment against the defendant charging him with conspiracy to travel/use of interstate facilities in aid of racketeering enterprises, in violation of 18 U.S.C. § 1952(a)(1), (a)(3), 371 (count 2); interstate travel/use of interstate facilities in aid of racketeering enterprises, in violation of 18 U.S.C. §§ 1952(a)(2) and 2 (counts 5 and 6); and one count of use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.  The defendant was arrested at his girlfriend's apartment in Washington, D.C. on January 26, 2012.

2.      The defendant made his initial appearance before United States Magistrate Judge Anderson later that same day, and the government made a motion for detention.  The defendant was detained pending further hearing.  On February 1, 2012, a detention hearing commenced before United State Magistrate Judge Buchanan.  The government introduced the testimony of Special Agent David DeFilippis, FBI, concerning the defendant's ownership and operation of an associated business enterprise engaged in prostitution, DMV Indys, and the defendant's

employment of a number of employees in this illicit enterprise, including his brother, who

collected prostitution proceeds for him.  The agent testified that even after Fairfax County,

Virginia Police arrested a number of prostitutes working for "DMV Indys" and his brother in

December 2011 for pandering, the defendant's prostitution business continued until his arrest.

The prostitutes knew the defendant as "Chris" and/or "Gene" and his calltaker as "Lisa."  The

agent continued to explain that the FBI had obtained and analyzed numerous bank accounts,

including accounts used by the defendant to receive the proceeds of his prostitution business.

However, there was no evidence of any legitimate source of income for the defendant from 2009

to the present.  The agent further testified that a review of Bank of America records for an

account belonging to another of the defendant's brother revealed that the defendant used this

account for pay for hotel and airfare for the prostitutes.  The agent testified that a search warrant

at the defendant's residence at the time of his arrest revealed $1,600 cash, 6 high end watches,

employment contracts for the escorts/prostitutes, foreign currency, account statements from the

Bank of Africa and an air gun (a photograph of which was introduced as government exhibit 1).

The agent further testified that during the conspiracy, the unindicted co-conspirator had

overheard the defendant state he owned property in Nigeria and had purchased a luxury vehicle

(an Aston Martin registered in his own name and that of one of his brothers in Miami, Florida).

The agent testified about the incident of violence in September 2010, as alleged in counts 5-7 of

the indictment, which involved the beating of an unindicted co-conspirator and the use of a

firearm by Akuiyibo.  The agent testified that the FBI did not recover either a firearm nor an air

gun from any of the searches of the residences of the co-conspirators.    Finally, the government

introduced an email obtained from a search warrant from

2

the defendant to co-defendant Akuiyibo concerning the use of violence against some of their "girls," which was introduced as government exhibit 2.

3.    On cross-examination, the agent testified that the defendant had been the subject of investigation by the FBI, along with co-defendant Akuiyibo, who owned and operated Classy DC Escorts.  The defendant was the subject of consensual recordings.  The investigation revealed that the two conspirators operated two separate business enterprises engaged in prostitution but that they used some of the same people in their operations.  The agent further explained that the investigation revealed that some, but not all, of the illicit funds were deposited, or caused to be deposited, by the defendant into a number of bank accounts but the government has not found all of the defendant's assets.  The agent also stated that the unindicted co-conspirator who was beaten had taken some steps to break away from making collections for co-defendant's prostitution business and that he and one of the prostitutes were planning to break away from Classy DC Escorts.

4.    The defendant is a risk of flight and a danger to the community.  Since the defendant was charged with a violation of 18 U.S.C. § 924(c), he is presumed to be a risk of flight and a danger to the community, pursuant to 18 U.S.C. § 3142(e).  The defendant cannot rebut that presumption here.  The §3142(g) factors to be considered here include the following:

a.    The nature and circumstances of the offenses charged include a crime of violence. To be clear, the indictment charged the defendant with conspiring to travel, and cause others to travel, in interstate commerce and use, and cause others to use, interstate facilities in interstate commerce with intent to distribute the proceeds of an unlawful activity, that is a business enterprise involving prostitution offenses and distributing and aiding and abetting the

3

distribution of the proceeds of a business enterprise involving prostitution offenses.  In addition, the defendant was charged with conspiring to travel, and cause others to travel, and use, and cause others to use interstate facilities with intent to promote, manage, establish and facilitate a business enterprise involving prostitution offenses.  The defendant was also charged with traveling, and causing others to travel, in interstate commerce to commit a crime of violence and using a firearm in furtherance of a crime of violence, to wit, the interstate travel in aid of racketeering, and aiding and abetting the use of a firearm to further a crime of violence;

b.      the weight of the evidence against the defendant includes evidence is strong and is from multiple sources, such as a wiretap, surveillance, physical items seized from his residence and the eyewitness testimony of numerous witnesses, including an informant;

c.      the history and characteristics of the defendant include the fact that he has used other names and bank accounts belonging to others, including a family member, to conceal his identity and to promote and manage his prostitution business.  The defendant has not had any legitimate income since he was laid off from his last job in 2009.  The defendant and his girlfriend provided conflicting statements to Pretrial Services about his self-employment and implied that it was legitimate.  According to Pretrial Services, the defendant has indicated that he has traveled overseas, including to Nigeria and China and that he has family in Nigeria and England.  Records seized from his residence reveal a bank account in Africa and foreign currency.  The defendant made statements to co-conspirators about owning property in Nigeria which were overheard by the unindicted co-conspirator.  The defendant has no familial, employment or legal ties to this district.  The defendant's own family members were interviewed by Pretrial Services and found to be uncooperative in providing information and/or unsuitable

4

third party custodians.  The defendant engaged at least two of his family members in this criminal enterprise.

5.      Moreover, when weighing all of these factors, it is clear that the defendant should be detained pending trial.  *See United States v. Bailey*, 750 F.Supp. 413 (W.D. Missouri 1990)(denying defendant's motion for revocation or amendment of detention order because defendant failed to present evidence contrary to the statutory presumption even where defendant's mother and aunt filed an affidavit stating their willingness to post their respective homes as security for defendant's release).

6.      "In a presumption case such as this, a defendant bears a limited burden of production - not a burden of persuasion - to rebut that presumption by coming forward with some evidence he does not pose a danger to the community or a risk of flight."  *United States v. Abad*, 350 F.3d 793 (8th Cir. 2003)(finding insufficient evidence to assure defendant's appearance at trial where parents willing to pledge family home where defendant faced a maximum sentence of thirty years if convicted), citing *United States v. Mercedes*, 254 F.3d 433, 436 (2nd Cir. 2001).  "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court."  *Id.* (emphasis added).

7.      Here, the defendant has failed to produce any evidence he does not pose a risk of flight if released.  If convicted at trial, the defendant faces at least a mandatory five years for one count of 18 U.S.C. § 924(c).  The possible mandatory minimum sentence facing the defendant has to be weighed strongly in favor of finding the defendant is a risk of flight in this case.

8.      The fact that the government seized the defendant's United States and Nigerian

passports in this case do not rebut the presumption of risk of flight even where the defendant would promise not to travel or obtain any new travel documents if released.  According to Special Agent DeFilippis, who spoke with the FBI Legal Attaché Office in Lagos, Nigeria, there is nothing preventing the defendant, a dual citizen of the United States and Nigeria, from requesting the issuance of a Nigerian passport.  According to the Legal Attaché Office, if the defendant fled to Nigeria, it would be very difficult for the United States to locate him based on the fact that Nigeria has a population of over 150 million people.  If the defendant were located and arrested in Nigeria, it would be difficult to keep him in custody because he would be entitled to detention and extradition hearings.  Even if extradited was ordered, the defendant has a right to appeal that order in Nigeria and the entire process is known to be difficult and last for years.

9.    The reality is that based on previous inconsistent statements about himself that the defendant made to Pretrial, any promises he makes to abide by conditions would be suspect where the defendant determines that it is not in his best interest to do so.  Upon release, there is nothing stopping the defendant from driving across the border into Canada with a driver's license, preventing the Embassy of Nigeria from issuing travel documents to the defendant upon request or to prevent the defendant using someone else's travel documents or creating his own documents.  The defendant is educated, articulate and an experienced foreign traveler who owned and operated a million dollar generating business.  The defendant has strong family ties to Nigeria (his father).  It is reasonable to infer that if released, the defendant will have no difficulty finding the resources to obtain a different identity and maintain a lifestyle on the run.  The government will therefore be prejudiced in its ability to subsequently locate, arrest and extradite the defendant back to the United States.

6

10.     The defendant has also proffered that the defendant's family members are willing to post the New Jersey home in which the defendant's mother and two of his siblings live as collateral for a bond. There is no evidence about the ownership of this home, and whether the has any equity, or value, if it were to be forfeited.  In addition, there is no inference that can be made that the defendant's family is even taking any risk in making this guarantee for his appearance at trial.  Moreover, the Pretrial Services Office has indicated that during an interview of the defendant's sister in New Jersey, she refused to provide the telephone number for the defendant's mother. There is no evidence that the mother was even aware of the charges pending against the defendant.  The investigation has revealed that one of the defendant's brothers accepted his illicit proceeds and that he used the bank account of another brother, one of the proposed third party property owners, to launder his illicit proceeds.  The defendant has not produced any evidence that the New Jersey property was not, in fact, derived from his illicit proceeds, traceable to his illicit proceeds.

11.     The critical issue is not whether the defendant, or his friends and family, have the financial means to post a bond but whether the amount of bond is reasonably calculated to assure his appearance at trial.  *Government of the Virgin Islands v. Lopez Texido*, 1996 WL 580372 (Terr. V.I. 1996) (denying defendant's motion for bail); *United States v. Borrows*, 486 F.2d 124 (1972); *see also United States v. Wright*, 483 F.2d 1068 (C.A. Md. 1973).

12.     Here, without any evidence of the value of the family property in New Jersey, any other income and assets owned by this person, and whether or not he/she could afford to lose the property if forfeited upon the defendant's failure to appear, this proffer cannot rebut the presumption that no combination of conditions will reasonably assure the defendant's

appearance, as required.  More importantly, since the defendant's illicit business operation

generated substantial sums of cash, and the defendant used the bank accounts of others to

launder his illicit proceeds, another reasonable inference is that the defendant has made an

agreement with the property owner in New Jersey to reimburse him/her or otherwise make them

whole (morally or financially) for the loss of their property, if forfeited by the Court.  Or maybe

the forfeiture of the property is a risk the family is willing to take to secure the defendant's

release from custody.  Such an agreement or understanding would make it appear to the Court

that the third party was risking parting with something of value (their property) thereby allowing

the defendant to be released, flee and/or disappear from the jurisdiction of the Court without

doing irreparable harm to his family.  The willingness of family to put up real property as

security for the defendant's appearance at court does not rebut the statutory presumption that he

is a risk of flight and certainly does not address whether he is a danger to the community.

        13.    Moreover, when weighed against the nature of the charges, the strength of the

government's case, the complete lack of any ties to this district, and the defendant's use of

aliases and bank accounts of others and his history of untruthfulness to Pretrial Services about

material facts, it is clear that the defendant should be detained pending trial.  *See United States v.*

*Bailey*, 750 F.Supp. 413 (W.D. Missouri 1990)(denying defendant's motion for revocation or

amendment of detention order because defendant failed to present evidence contrary to the

statutory presumption even where defendant's mother and aunt filed an affidavit stating their

willingness to post their respective homes as security for defendant's release).

        When weighed against all of the foregoing factors, the defendant's proposed conditions

of release to not rebut the presumption that the defendant is a risk of flight or a danger to the

community.  WHEREFORE, the United States respectfully moves this Honorable Court to detain

the defendant pending trial.

                                 Respectfully submitted,

                                 NEIL H. MACBRIDE
                                 UNITED STATES ATTORNEY


By:      /s/_____
               Kimberly Riley Pedersen
               Patricia Haynes
               Assistant United States Attorneys
               United States Attorney's Office
               Justin W. Williams U.S. Attorney's Building
               2100 Jamieson Avenue
               Alexandria, Virginia 22314
               Phone:  703-299-3700
               Fax: 703-299-3982
               Email Address: kimberly.riley.pedersen@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Response in Support of Detention was

filed via ECF this 16th day of February, 2012, which sends a copy to counsel of record:

        Nina J. Ginsberg, Esq.
        DiMuroGinsberg, P.C.
        1101 King Street, Suite 610
        Alexandria, VA 22314
        phone 703-684-4333
        fax 703-548-3181
        nginsberg@dimuro.com


                                        /s/
                                        Kimberly Riley Pedersen
                                        Assistant United States Attorney
                                        Attorneys for the United States of America
                                        United States Attorney's Office
                                        Justin W. Williams U.S. Attorney's Building
                                        2100 Jamieson Avenue
                                        Alexandria, Virginia 22314
                                        Phone:  703-299-3700
                                        Fax: 703-299-3982
                                        kimberly.riley.pedersen@usdoj.gov

10